Lee C. BURKINS, Plaintiff,

v.

UNITED STATES of America; Lt. Ben. John B. Conaway, Director, National Guard Bureau; Department of the Army, Togo D. West, Secretary; Army Board for Correction of Military Records, David Kinneer, Executive Secretary, Defendants.

Civil Action No. 93–K–2125.

United States District Court,
D. Colorado.

Jan. 25, 1996.

See also 865 F.Supp. 1480.

Eva Camacho Woodard, Lakewood, CO, for Plaintiff.

Chalk S. Mitchell, Assistant U.S. Attorney, Denver, CO, for Defendants.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

KANE, Senior District Judge.

Before me is Plaintiff Lee C. Burkins' objection to that part of the November 28, 1995 recommendation of Magistrate Judge Borchers, denying Burkins' request to order the Department of Army Board for Correction of Military Records ("ABCMR") to correct its records. I sustain the objection and decline to follow that part of the recommendation. I order the ABCMR to correct its records to reflect that Burkins was unfit to perform his military duties and is accordingly entitled to 100% disability payment as of that date.

### I. *Background.*

Burkins filed a request with the ABCMR to correct his medical records to reflect he received a medical retirement effective November 4, 1970, the day he left active duty with the United States Army.[1] Burkins based his request on his belief that he was medically unfit on that date as a result of Post Traumatic Stress Disorder ("PTSD") incurred while serving in Vietnam before his release.

---

1. I outlined the history of events leading up to this point of the case in *Burkins v. United States,* 865 F.Supp. 1480 (D.Colo.1994).

The ABCMR granted Burkins' initial request for correction of records in part to reflect a 50% disability retroactive to March 18, 1987.[2]

While the subject case was pending, Burkins obtained a letter from Franklin D. Miller, retired Command Sergeant Major ("CSM"). On May 12, 1995, I remanded this case to the ABCMR to consider this letter as newly discovered evidence. The ABCMR again denied Burkins' request for correction of his records to reflect medical retirement from PTSD effective November 4, 1970.

Burkins notified this court of the denial, asserting the ABCMR's decision to be arbitrary, capricious and not based upon substantial evidence. On October 17, 1995, I issued a further special order of reference to Magistrate Judge Borchers with regard to the July 24, 1995 decision of the ABCMR and Burkins' request for attorney fees and costs.

On November 28, 1995, the magistrate judge found the ABCMR decision not arbitrary, capricious or an abuse of discretion and recommended Burkins' claim for mandamus under 28 U.S.C. § 1361[3] be denied. He further recommended attorney fees and costs be awarded to Burkins in the amount of $15,032.14 under the Freedom of Information Act.

On December 5, 1995, Burkins objected to the recommendation insofar as it denied the mandamus, arguing Magistrate Judge Borchers overlooked facts which proved the final decision of the ABCMR to be arbitrary capricious and not based upon substantial evidence.

## II.  *Standard for Review.*

■ Decisions of the ABCMR can be set aside if they are arbitrary, capricious, or not based on substantial evidence. *Burkins v. United States,* 865 F.Supp. 1480, 1499 (D.Colo.1994) (citing *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983)). In such circumstances, I am given the power to order the correction of records. *Reale v. United States,* 208 Ct. Cl. 1010, 1013, 529 F.2d 533, *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976).

■ "The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574 (10th Cir.1994) (footnote omitted). A basis for setting aside the agency action is if it entirely failed to consider an important aspect of the problem or offered an explanation that runs counter to the evidence before it. *Id.* In addition, the "arbitrary and capricious" standard requires an agency's action to be supported by the facts in the record. *Id.* at 1575.

■ Under 28 U.S.C. § 636, I make a de novo determination of those portions of the recommendation to which objection is made. This requires an independent consideration of those issues giving no deference to the decision under review. *Robinson v. Missouri Pacific R.R.,* 16 F.3d 1083, 1092 (10th Cir.1994).

Accordingly, I review the decision of the ABCMR de novo and set it aside only if I determine it was arbitrary, capricious, or not based on substantial evidence.

## III.  *Review.*

■ The question which confronted the ABCMR was whether at the time of his separation from the military in November 1970, Burkins was unfit to perform the duties of his military office under 10 U.S.C. § 1201.

The ABCMR found Burkins may have had indications of PTSD when he left active duty in 1970 but was not unfit to perform his military duties as of that date. The ABCMR based its decision on the lack of evidence that Burkins was unfit to perform his duties at the time of his discharge on November 4,

---

**2.** On July 18, 1991, the Veteran's Administration (now Department of Veterans Affairs) increased Burkins' PTSD disability rating to 100% retroactive to November 24, 1987.

**3.** Title 28 U.S.C. § 1361 states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

1970, the fact that he did not appear unfit in 1982 when he enlisted in the Hawaii Army National Guard (HARNG) without mentioning any problem, that he performed his military duties and was promoted to staff sergeant in 1983.[4]

It is undisputed that at the end of Burkins' tour of duty in Vietnam in September 1970, he "began experiencing sleeplessness, frequent sweating and large weight loss." (A.R. at 45.) After this he was admitted to an army field hospital in Saigon, examined for several days and diagnosed with a fever of unknown origin. He returned to his unit. His sleeping remained troubled and restless. He was later removed from the field, flown to Ft. Lewis, Washington, and processed out of the military on November 4, 1970 (*Id.*).

Burkins was not then given the diagnosis of PTSD. However, as the ABCMR has noted, PTSD was not recognized as a specific psychiatric disorder until 1980 with the publication of the Diagnostic and Statistical Manual of Mental Disorders.

At this point in time, however, the record includes a February 1, 1995 statement of Franklin D. Miller, Command Sergeant Major (CSM) (Retired), who attained the United States Army's highest enlisted rank and was awarded the Congressional Medal of Honor. CSM Miller states:

> After experiencing the deaths of many comrades and feeling personally responsible for some of their deaths, SSG Burkins slept little and had frequent nightmares. He consistently volunteered for many other hazardous missions. He was obsessed on [sic] killing the North Vietnamese.

> As a Command Sergeant Major in the U.S. Army, I have attended university level courses on command level problems with respect to combat related stress situations. I now believe SSG Burkins actions of sleeplessness, rage and guilt in Vietnam were definite classical symptoms of Post Traumatic Stress Disorder. Since 1970, I have stayed in contact with SSG Burkins and over the years I have observed his

inability to deal with the seriousness of his PTSD.

(Annexure to Pl.Mot. to Supplement ABCMR Record on Remand.)

The magistrate judge recommended a remand to the ABCMR to allow it to consider this newly discovered evidence which, he said, "is significant and gives substance to the Plaintiff's claim of PTSD." (Recommendation Apr. 20, 1995 at 9.) The ABCMR, however, took a part of the CSM's statement out of context, namely that Burkins "consistently volunteered for many other hazardous missions" and said it reflected he was fit to perform his military services at the time. The ABCMR disregarded the rest of the statement regarding Burkins' nightmares, sleeplessness and obsession with killing the North Vietnamese, words that do not equate with fitness.

Moreover, PTSD has been defined as a syndrome which "involves a triad of responses involving episodic unwanted recollections of the trauma, emotional anesthesia or numbing of feelings, combined with heightened autonomic nervous system arousal resulting in hypervigilance and easy irritability sometimes evolving into rage." Karl Kirkland, Ph.D., *Post–Traumatic Stress Disorder vs. Pseudo Post–Traumatic Stress Disorder,* 56 Ala.Law. 90, 91 (1995). Burkins' volunteering for hazardous missions is consistent with an exaggerated vigilance now recognized as so characteristic of PTSD. I find the ABCMR's conclusion that the statement of CSM Miller supports a finding of Burkins' fitness in 1970 is irrational.

In 1984 Burkins displayed well-recognized symptoms of PTSD when he became hysterical and fired his weapon at fellow soldiers while screaming that North Vietnamese soldiers were in the compound. These symptoms may have manifested themselves at any time. To assert that before the 1984 incident Burkins was not suffering from a disabling condition of PTSD, knowing as we now do that he had PTSD in 1970, ignores the episodic and chronic nature of PTSD.

---

**4.** During a field exercise in 1984, Burkins became hysterical and fired his weapon at fellow soldiers while screaming that North Vietnamese Army soldiers were in the compound. He was transferred to inactive status on July 2, 1984.

The ABCMR also relies on the fact that, on a routine medical discharge examination on November 4, 1970, Burkins stated he felt he was in good physical condition. (A.R. at 231.) Burkins did not, however, say he felt he was in a good mental condition, nor is there evidence in the record that the medical examination included a mental examination.[5]

On May 23, 1971, within eight months after Burkins' discharge, he applied to the Veterans Administration for benefits. He complained of "Constant ringing in both ears. (began about a year ago) Vietnam Louder at times. Interferes with sleeping." (A.R. at 224.) Burkins was found to have service-connected tinnitus.

There is, however, a continuity of undisputed evidence showing Burkins was unfit due to PTSD at the time he served in Vietnam, shortly thereafter in 1970, and continuously from 1970 through 1987. A review of the medical opinions and social surveys on record lend support to Burkins' narrative of unfitness. In reaching its decision that there was a lack of evidence as to the severity of Burkins' PTSD in 1970, the ABCMR ignored this evidence.

The fact that most of the evidence of the nature and severity of Burkins' PTSD is post release does not detract from its import. *See Ferrell v. United States,* 23 Cl.Ct. 562, 571 (1991) (not inappropriate to consider post release evidence, particularly when the examination at the time of release was perfunctory). Here, the discharge examination on November 4, 1970 was routine and physical, rather than mental, in nature. In addition, the diagnosis of PTSD recognized in the post release reports was unknown in 1970.

A 1987 social survey done on Burkins reflects that after his service in Vietnam, he had fits of rage, lost his pre-service job because of raging at customers and was unemployable.[6] (A.R. at 176–80.) The survey reflects immediately after his discharge, Burkins was unable to hold down his previous job or find a job, was arrested for a drug offense, and could not hold a meaningful relationship. He attempted college but was stressed due to having three part-time jobs and having daytime flashbacks. He ran out of money and moved to the jungled mountains of Hawaii in 1980. To survive, he sold flowers he had picked from the hillside from his illegally parked truck at the side of the street.

A 1980 medical report of Dr. Carl F. Sternberg diagnoses PTSD. (A.R. at 210.) He notes under a brief history that Burkins was "involved in combat, experiencing life-threatening situations, and witnessing the wounding and deaths of comrades." As part of his psychological findings, Dr. Sternberg states:

> Mr. Burkins reexperienced traumatic events in recurrent and intrusive recollections, in recurrent dreams and in flashbacks. He manifested a lack of involvement with the external world, in loss of interest in significant activities, in feelings of detachment and estrangement from other people, and in constricted affect. He manifested hyperalertness, exaggerated startle response, sleep disturbance, survivor guilt, memory impairment, trouble concentrating, avoidance of activities that arouse recollection of the traumatic events, and intensification of the above symptoms by exposure to events that symbolize or resemble the traumatic events. He also described other symptoms of anxiety and depression.

(A.R. at 210.) In Dr. Sternberg's opinion, Burkins was not able to obtain and retain substantially gainful employment.

In addition, there are a series of doctors' reports after the 1984 incident opining that Burkins' PTSD relates back to 1970 and Vietnam. The 1987 report of Charles A. Hesterly M.D. reflects a diagnosis of chronic type PTSD, impliedly as a result of having served in Vietnam. (A.R. at 36–38.) A 1989

---

**5.** The line drawn under "normal" alongside the various categories for "Clinical–Evaluation" appears to fall short of category 42 "Psychiatric." (A.R. 231.) Under category 72 "Psychological and Psychomotor" there is no notation. (A.R. 232.)

**6.** This survey is important because it covers the period 1970 to 1982, a period on which the magistrate judge found the record to be "basically silent." (Recommendation Nov. 28, 1995 at 7.)

report of Stephen E. Staten, M.D. who treated Burkins for PTSD, states: "Since Mr. Burkins has suffered these symptoms since 1970, it is unlikely that his disorder will cease." (A.R. at 41.) No evidence of any treating physician states otherwise.

An applicable standard in determining whether a decision is arbitrary or capricious is whether an agency has provided a reasonable basis or explanation for a decision that it has made. Here, the ABCMR ignored, without explanation, Burkins' narrative, the social surveys and the opinions of Drs. Staten, Hesterly and Sternwood concerning the onset and severity of Burkins' PTSD in 1970.

The uncontradicted evidence in the record reflects Burkins suffered PTSD commencing before he left the service in 1970 and continued to suffer from the disorder thereafter. The only possible basis for the ABCMR's conclusion that Burkins was fit for military duties at the time of his discharge in 1970 is that, because he lacked any PTSD symptom at the time of his discharge, he was not disabled from performing his military duties. The statement of CSM Miller, Burkins' own narrative, and the various post release medical reports and surveys do not support such a conclusion.

The ABCMR's decision resting on the lack of evidence confronts Burkins with a "Catch 22." In 1970, the army did not give Burkins a mental examination, nor, in 1984, at the time of Burkins' discharge, did the army afford him processing by a Medical Evaluation Board ("MEB"). Now, the ABCMR asserts Burkins does not have the evidence to show that he had disabling PTSD relating back to 1970. Indeed, one is left to wonder what purpose the ABCMR seeks to serve.

The situation is not unlike that in *Ferrell v. United States,* 23 Cl.Ct. 562 (1991). There, after discharge, the plaintiff attempted to show his back-injuries were service-connected. The Air Force Board for the Correction of Military Records (AFBMCR) denied his request to change his discharge to one of medical disability. Ferrell had not been given a separation physical or MEB processing at the time of his discharge. The court found this deviation from standard military procedure "troubling." *Id.* at 568.

Ferrell has not shown himself to be disabled during service, and yet was not given the opportunity to prove he was disabled through an MEB or a separation occupational physical because his voluntary resignation was processed, in the face of his request for a hold, and in the face of regulations which strongly counsel a hold in such circumstances.

*Id.* at 569. The *Ferrell* court found the record contained substantial evidence that the plaintiff was partially disabled. *Id.* at 571. Noting that much of the evidence was post release, the court found it nevertheless appropriate to consider the evidence "particularly when the examination at the time of release was perfunctory." *Id.*

This principle applies, *a fortiori,* here where the November 4, 1970 discharge examination apparently lacked any recorded form of mental examination, where PTSD clearly occurred, but was not a recognized diagnosis until 1980 and, where, through its fraudulence and lack of adherence to regulations, the army failed to give Burkins a medical examination upon his discharge from the HARNG in 1984.

No mental examination was performed on Burkins by the army or the HARNG despite ample evidence that he suffered a mental condition as PTSD in 1984. As Edward K. Jeffer, Colonel, GS Chief Surgeon, Army National Guard has stated: "A psychologically sophisticated unit command would have recognized [the too real recreations of battle stress during HARNG training were not in Burkins' best interest] and facilitated his resignation, *or if continued duty was felt to be appropriate would have arranged for a Mental Health Assessment.*" (A.R. at 82) (emphasis added).

The Department of the Army Regulations in effect in 1984, specifically AR 635–40, mandated if there were questions as to fitness of a member, he was to be referred for a physical evaluation. Under those regulations,

[a]ll relevant evidence must be considered in evaluating the fitness of a member. For example, when a referral for physical evaluation immediately follows acute grave ill-

ness or injury, the medical evaluation may have the greater weight. This is particularly true if medical evidence establishes the fact that continued service would be harmful to the member's health.

(Army Regulation 635–40–2–1c.)

The severity of Burkins' PTSD in 1984 following the HARNG incident is undisputed. Had he been referred for evaluation for unfitness because of disability in 1984, that evaluation would have had "the greater weight" in determining disability.

In addition, the regulations contain a series of presumptions applicable to physical disability evaluation. Two of those presumptions are:

(1) A member was in sound physical and mental condition upon entering active duty except for physical disabilities noted and recorded at the time of entrance.

(2) Any disease or injury discovered after a member enters active service while the member is entitled to receive basic pay and not due to the member's intentional misconduct or wilful neglect was incurred in the line of duty.

. . . .

(5) The foregoing presumptions may be overcome only by a preponderance of the evidence, which differs from personal opinion, speculation or conjecture. When reasonable doubt exists about a member's condition, an attempt should be made to resolve the doubt by further clinical investigation and observation, and any other evidence that may apply. In the absence of such proof by a preponderance of evidence, resolve reasonable doubt in favor of the member.

(Army Regulation 635–40–2–2.)

The ABCMR's finding that a medical examination in 1984 could not have led to a determination that Burkins was physically unfit for military service in 1970 ignores the import of the presumptions contained within these army regulations. As such the finding is arbitrary and capricious for failure to consider all relevant factors, including the applicable regulations.

"The question is not whether he displayed symptoms of PTSD [at the time of his discharge] but whether, (1) had qualified medical personnel fully examined him, he would have been found to have PTSD, or (2) it is clear from subsequently discovered medical evidence that he had chronic PTSD then." *Cowan v. United States*, No. 93–182C, slip op. at 13 (Ct.Cl. July 29, 1994). Post release evidence clearly indicates that, had Burkins received appropriate mental examinations from the army, he would have been found to have disabling PTSD.

Further, even though the ABCMR apparently does not dispute Burkins was unfit for military service in 1984, his records have only been corrected to reflect disability as of 1987. This implies a determination of fitness between 1984 and 1987 for which there is a total absence of evidence.

Based upon the evidence in the record, I conclude the ABMCR's denial of Burkins' request for correction of his records to reflect medical retirement from PTSD effective November 4, 1970 was arbitrary, capricious and not based on substantial evidence and that reasonable minds could not reach differing conclusions in this regard.

Accordingly, I substitute sound judgment for the action of the military. *See Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir.1986) (affirming trial court's conclusion that the decision of the ABCMR was arbitrary and capricious and not based on substantial evidence and its order that the army issue plaintiff an honorable discharge in place of his dishonorable discharge); *see also Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir.1983) (courts cannot substitute their judgment for that of the military if reasonable minds could not reach differing conclusions on the same evidence).

### IV. *Conclusion.*

For the reasons stated above, I sustain the objection and decline to adopt that part of the November 28, 1995 Recommendation of United States Magistrate Judge to which Lee C. Burkins has objected. I accept that part of the Recommendation to which there has been no objection, awarding attorney fees and costs under the Freedom of Information Act to Burkins in the sum of $15,-032.14. Accordingly,

IT IS ORDERED THAT attorney fees and costs under the Freedom of Information Act in the amount of $15,032.14 are awarded to Lee C. Burkins and against those Defendants before the court;

IT IS FURTHER ORDERED THAT the ABCMR, within thirty days of this order, enter findings into the military records of Lee C. Burkins that state: "Based upon the ABCMR record, retroactive to November 4, 1970, Lee C. Burkins should have been granted a disability discharge because he suffered from the condition of Post Traumatic Stress Disorder and the condition was 100% disabling;"

IT IS FURTHER ORDERED THAT the ABCMR follow its regulations and present Lee C. Burkins with computations showing the present value of the disability retirement pay plus cost of living increases, plus statutory interest, compounded quarterly, that should have been paid to Lee C. Burkins for the period of time from November 4, 1970 to March 18, 1987 had he properly received a "disability" discharge at the 100% level;

IT IS FURTHER ORDERED THAT the parties shall brief the issue of the award of attorney fees under the Equal Access to Justice Act ("EAJA") as follows: Plaintiff shall file a brief and affidavits in support of EAJA attorney fees by February 15, 1996. Defendants may file an answer brief and countervailing affidavits by February 27, 1996. Plaintiff may file a reply brief by March 5, 1996. If factual issues are contested the matter will be set for evidentiary hearing. No discovery will be permitted. The issues will be confined to those contained in the specific factual disputes. Oral argument with or without the taking of evidence is set for **Tuesday, March 12, 1996 at 10:30 a.m. in Courtroom C–401.**