Robert Wayne LEE, Plaintiff–Appellant,

v.

Dr. Scott CALHOUN, Defendant–Appellee,

Scott W. Calhoun, M.D., Inc., Defendant.

No. 90–6013.

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1991.

---

Dianna S. Wisdom, Oklahoma City, Okl., for plaintiff-appellant.

George W. Paull, Jr. (George F. Short and Cynthia L. Sparling, Oklahoma City, Okl., of counsel, Short, Barnes, Wiggins, Margo & Adler, with him, on the brief), for defendant-appellee Scott Calhoun, M.D.

Before MOORE and EBEL, Circuit Judges, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

Plaintiff Robert Wayne Lee filed suit for medical malpractice. The claim arose from emergency surgery performed upon plaintiff to repair a perforated bowel. When the suit was filed, a reporter approached the defendant Dr. Calhoon.[1] The doctor explained that plaintiff's medical condition, requiring emergency surgery, was a consequence of patients who are AIDS carriers. This explanation appeared in a news item published in *The Daily Oklahoman.*

The facts are not in dispute. Plaintiff went to the emergency room of Baptist Hospital on May 3, 1987. He was examined by Dr. Crook and Dr. Camp, who diagnosed "possible acute appendicitis," and defendant Dr. Calhoon was called in

---

* Honorable Wesley E. Brown, United States Senior District Judge, District of Kansas, sitting by designation

1. "Calhoon" is the correct spelling of the defendant's surname.

for an evaluation. (Record Vol. II, Item 152.) Dr. Crook and Dr. Camp are not defendants in this action. Plaintiff signed a consent form for an appendectomy. Dr. Calhoon operated on the plaintiff. The surgery revealed that he suffered from a perforated bowel rather than appendicitis. Dr. Calhoon therefore performed a colostomy. A blood test subsequently revealed that plaintiff had tested positive for AIDS (the "HIV" virus).

Plaintiff then filed suit claiming Calhoon had misdiagnosed his condition and failed to obtain his consent for the unnecessary surgical procedure which was performed. Plaintiff's complaint, filed March 1, 1988, sought $38 million damages. The interview with the reporter took place on March 2, the day after the lawsuit was filed. The news item which appeared in the Daily Oklahoman was as follows:

> Calhoon said Tuesday that Lee needed emergency surgery because he had a perforated colon and was infected with the acquired immune deficiency syndrome virus.
>
> "He was seen in the emergency room and thought to have appendicitis," Calhoon said.
>
> "This was before we identified that he was a carrier of the AIDS virus. He needed emergency surgery and at that time a perforated colon was identified.
>
> "Life-saving surgery was performed, which was a temporary colostomy. He had a preoperative diagnosis of appendicitis because he gave us no history of being an AIDS carrier.
>
> "If we had known of his AIDS exposure, other more esoteric types of infections, which are common in immuno-compromised hosts, would have been considered," Calhoon said.

After this story appeared in the paper, plaintiff amended his complaint to include defamation, invasion of privacy, and breach of doctor/patient confidentiality.

The malpractice claim was dismissed,[2] and summary judgments were entered in favor of defendant Calhoon upon findings that plaintiff had waived his physician-patient privilege, and that plaintiff had failed to establish his right to proceed on his claims of defamation, invasion of privacy, and "intrusion upon seclusion."

In this appeal plaintiff contends that the district court erred in finding that plaintiff had waived the physician/patient privilege, and had further erred in finding that Dr. Calhoon's statements were conditionally privileged and did not violate plaintiff's privacy under Restatement (Second) of Torts § 652B. Plaintiff further contends that the trial court unduly limited discovery, and that disputed factual issues, and lack of consent for administering the AIDS test precluded dismissal of his claims by summary judgment.

Following our review of the record, we find no error and affirm the judgment.

The trial court entered a number of orders on cross motions for summary judgment before reaching a final judgment in this case, and it is necessary to discuss these in some detail.

By an order of March 3, 1989, the court dismissed plaintiff's claims of defamation, invasion of privacy and breach of confidentiality against Baptist Medical Center, Oklahoma Health Care & Baptist Medical Plaza Associated (Record Vol. I, Docket No. 119); and by order of March 16, (Docket No. 124), the court found that plaintiff failed to state a claim against these defendants, and their motion to dismiss was granted.

Additional orders were entered on March 16, (Record Vol. II, Docket Nos. 122, 123, 124). The court found that Dr. Calhoon was entitled to summary judgment on the plaintiff's defamation claim because his statement regarding plaintiff's status as an AIDS carrier was true. The court denied both parties' motions for summary judg-

---

**2.** Plaintiff moved to dismiss with prejudice all of the defendants in this action with regard to his medical malpractice claims and to dismiss without prejudice the defendants Baptist Medical Center of Oklahoma, Oklahoma Healthcare and Baptist Medical Plaza Associates with regard to his invasion of privacy and disclosure of private information claims, reserving these claims only as to Dr. Calhoon. Record, Vol I, Item 86.

ment on other claims. The parties were directed to supplement the record with reference to plaintiff's claims for invasion of privacy as set out under Restatement (Second) of Torts § 652A. Thus, one who invades the privacy of another is liable for resulting harm when there is an "unreasonable intrusion upon the seclusion of another" (§ 652B), or "appropriation of the other's name or likeness" (§ 652C), or "publicity that unreasonably places the other in a false light before the public" (§ 652E).

Plaintiff's claim of "intrusion upon seclusion" is based on provisions of § 652B:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Section 652B liability does not require publication of private matters. The invasion may consist of forced entry into a person's home, eavesdropping or spying upon a person's private affairs, or tampering with a person's private papers or mail.

Plaintiff's "invasion of privacy" claim is based upon § 652D which provides in pertinent part that:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

Liability under this section is based upon publicity given to true statements of fact. "There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." Comment b, § 652D.

In *McCormack v. Oklahoma Publishing Co.*, 613 P.2d 737 (Okl.1980), the Oklahoma court recognized a right of action for invasion of privacy, if a plaintiff could establish the public disclosure of a private fact, when such fact was not of "legitimate public concern." [3]

■■] The district court correctly found that plaintiff became a public figure by filing his lawsuit, since the size of his claim—$38 million—and the nature of the claim—malpractice, had attracted the attention of the news media. As the court noted, these matters are of legitimate public concern "because of the public interest or debate regarding the size of litigation claims and jury awards ... and the public concern in policing failures in the medical profession." In *Gilbert v. Medical Economics Company*, 665 F.2d 305 (10th Cir. 1981), the defendant published an article discussing the personal and professional problems of a physician involved in two incidents of alleged malpractice. This court affirmed the grant of summary judgment to the publisher, recognizing that the article was of legitimate public interest, since it involved the competency of licensed professionals. We there noted that the publication of plaintiff's psychiatric and marital problems were "substantially relevant to the newsworthy topic," through "the rational inference that plaintiff's personal problems were the underlying cause of the acts of alleged malpractice." *Gilbert v. Medical Economics Co. supra*, 665 F.2d at 308–309.

With respect to the question of whether the doctor's comments pertained to his defense of the lawsuit, the court ordered Dr. Calhoon to provide evidence of this fact within five days of the order. On June 30, Dr. Calhoon supplied an affidavit establishing this connection (Record Vol II, Item 132):

**3.** In *McCormack* a news story related that plaintiff, "a one-time gambler and illegal casino operator in Oklahoma City," had connections with the Mafia and organized crime. Plaintiff claimed that the events mentioned occurred more than twenty years before, and that the publication invaded his right of privacy. While recognizing the tort of invasion of privacy, the court found that plaintiff made no allegation that the facts were private and not of public record, and did not allege that the facts were not of legitimate public concern. Dismissal of the case was affirmed upon the finding that there could be no liability for publicizing facts which were matters of public record.

I affirmatively state that the statement made by me in response to questions by the newspaper reporter, and as printed in the newspaper article at issue in this case, were simply expressions of the facts and issues relevant to my defense in this multi-million dollar lawsuit about which I was being questioned. Mr. Lee's original lawsuit alleged that I did not advise him prior to the surgery that he might have a perforated bowel and require a colostomy. In my defense, had Mr. Lee advised me or had I known prior to surgery that Mr. Lee was an AIDS virus carrier, I would have been alerted to a higher probability that he might have a perforated bowel due to more esoteric types of infections which are common with immuno-compromised patients such as Mr. Lee, and I would have so informed him.

■ In this case, Dr. Calhoon's comments clearly pertained to his defense of the lawsuit, and, as found by the trial court, "were sufficiently related to the news story to preclude them from serving as the basis for an invasion of privacy claim."

■ The district court also found that defendant Calhoon was entitled to summary judgment on plaintiff's § 652 invasion of privacy claim because even if the plaintiff had not become an involuntary public figure, with a lawsuit which was a matter of public interest, Dr. Calhoon's statements were conditionally privileged under § 594. The elements of conditional privilege as set out in § 593 provide that one who publishes defamatory material is not liable if "the matter is published upon an occasion that makes it conditionally privileged, and the privilege is not abused." The trial court correctly found that the defendant did not abuse the conditional privilege. Section 594 of the Restatement provides that:

An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and

(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

The principle set out in § 594 simply means that one whose reputation is under attack has the right to defend himself:

A conditional privilege exists ... when the person making the publication reasonably believes that his interest in his own reputation has been unlawfully invaded by another person and that the defamatory matter that he publishes about the other is reasonably necessary to defend himself. The privilege here is analogous to that of self-defense against battery, assault or false imprisonment ... Thus the defendant may publish in an appropriate manner anything that he reasonably believes to be necessary to defend his own reputation against the defamation of another ... (Comment k, § 594)

The occasion upon which Dr. Calhoon made his statement and explanation, in response to the reporter's inquiry into the circumstances of the lawsuit, was clearly an instance in which Dr. Calhoon was entitled to provide information that affected his important interest in his own reputation as a medical provider. Plaintiff failed to provide any evidence that defendant abused his conditional privilege, and under such circumstance, the trial court properly entered summary judgment in favor of defendant upon the § 652 invasion of privacy claim.

■ As to plaintiff's claim for breach of an "implied agreement of confidentiality," the district court found that plaintiff had waived the physician-patient privilege under 76 Okl.Stat. § 19, which provides in pertinent part that:

In cases involving a claim for personal injury or death against any practitioner of the healing arts or a licensed hospital, arising out of patient care, where any person has placed his physical or mental condition in issue by the commencement of any action, proceeding or suit for damages, ... *he shall be deemed to waive any privilege* granted by law concerning *any* communication made to a physician

or health care provider ... or *any* knowledge obtained by such physician or health care provider by personal examination of any such patient; provided that, before any such communication, medical or hospital record or testimony is admitted in evidence in any proceeding it must be material and relevant to an issue therein according to existing rules of evidence. (Emphasis supplied).

It is clear that Dr. Calhoon's comments were entirely relevant to the medical malpractice action in question, and the information he gave was the subject matter of his defense to plaintiff's allegation of malpractice. Indeed, his explanation of the cause and need for emergency surgery entirely justified the dismissal of all malpractice claims. Here the Oklahoma statute is very plain, and all inclusive—it covered "any privilege," and "any communication," with reference to "any physical or mental condition." Under Oklahoma law the language of the statute must prevail. In *Cave Springs Public School District I. 30*, 613 P.2d 1046 (Okl.1980), the rule was stated in this manner:

Where the language of a statute is plain and unambiguous, and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed by the language therein employed.

Further support for the finding of a waiver of the physician-patient privilege is found in the trial court's reference to 12 O.S. § 1443.1, which provides that expressions of opinion in regard to judicial proceedings are not actionable as libel:

1443.1. Privileged communication defined—Exemption from libel

A. A privileged publication or communication is one made:

First. In any legislative or judicial proceeding or any other proceeding authorized by law;

Second. In the proper discharge of an official duty;

Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.

B. No publication which under this section would be privileged shall be punishable as libel.

The trial court properly ruled that plaintiff waived the physician-patient privilege, and the entry of summary judgment in favor of defendant upon the claim of breach of the implied warranty of confidentiality was appropriate.

With respect to plaintiff's "invasion of privacy" claim, (§ 652B, *supra*, intrusion upon seclusion) which was based upon the allegation that blood had been drawn for the AIDS test without his permission, the court permitted the parties to submit additional information concerning the matter.

On July 24, 1989, the court allowed plaintiff time to conduct additional discovery "limited to the question of whether defendant Calhoon ordered the AIDS tests or knew that they had been ordered and approved or ratified such," (Record Vol. II, Item 135).

On October 11, 1989, the court entered an order and final judgment granting defendant Calhoon summary judgment on plaintiff's remaining claim for invasion of privacy under § 652B because plaintiff failed to provide evidence to support such claim. Record Vol. II, Items 144, 145. On plaintiff's motion, the order and judgment were vacated and plaintiff was granted additional time until December 4 to conduct any further discovery necessary to establish his invasion of privacy claim. Record Vol. II, Item 149, Order of November 1, 1989. After reviewing all of the evidence presented by the parties on the issue, the court determined that plaintiff had failed to submit sufficient proof to controvert the evidence submitted by Dr. Calhoon which was to the effect that he did not order or authorize AIDS tests on the occasion in question. In accordance with these findings, judgment was again entered in favor

of defendant, Dr. Calhoon. (Order and Judgment of December 12, 1989, Record Vol. II, Items 156, 157.)

In sworn statements, Dr. Calhoon denied that he ordered tests to determine plaintiff's AIDS status. (Vol. II, Item 128, Exhibits "A," "B"). Dr. Calhoon first learned that plaintiff was HIV positive on May 5, two days following the operation.

Plaintiff's argument that the tests were ordered by Dr. Calhoon is pure speculation and contrary to the evidence presented to the trial court. In lab reports submitted by plaintiff himself, several other doctors are noted as requesting tests—i.e., Doctors Gilcher, Crook, Camp, and "Non–Staff M.D." (Record Vol. II, Exhibits to Item 133.)

On the basis of affidavits and depositions presented on the issue the trial court made these findings:

> The plaintiff has filed his supplemental response and, in addition to failing to explain his exhibit "B," has failed to submit sufficient proof to controvert the evidence submitted by the defendant that he did not order or authorize either of the two AIDS tests. To the contrary, the only credible evidence establishes that the initial test was ordered by Dr. Crook and the subsequent test was automatically required by the Baptist Medical Center's blood bank due to the results of the HTLV–III test.[4]

Plaintiff failed to submit any evidence to controvert defendant's evidence that Dr. Calhoon was not the one who ordered the AIDS test. The trial court properly dismissed the § 652B complaint because there was no genuine issue of conflicting material facts on the issue.

The rulings and judgment of the trial court were correct in all respects, and the Judgment is AFFIRMED.

**4.** See Depositions, Record Vol II, Exh. A to Docket 153 and Docket 154, Deposition of Carolyn Taylor, Baptist Medical Center Blood Bank.