Lee C. BURKINS, Plaintiff,

v.

UNITED STATES of America; Lt. Gen. John B. Conaway, Director, National Guard Bureau; Department of the Army, Togo D. West, Secretary; Army Board for Correction of Military Records, David Kinneer, Executive Secretary; Douglas Tom, and John L. Patrick, Jr., Defendants.

Civ. A. No. 93–K–2125.

United States District Court, D.Colorado.

Oct. 4, 1994.

Eva Camacho Woodard, Lakewood, CO, for plaintiff.

Chalk S. Mitchell, Ass't U.S. Atty., for U.S.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is before me on Defendants' motion to dismiss or in the alternative for summary judgment and Plaintiff Lee Burkins' cross-motion for summary judgment. Plaintiff has filed five claims requesting mandamus and injunctive relief to correct his military records, damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 ("FTCA"), or 42 U.S.C. § 1983, and access to and correction of his records under the Freedom of Information Act ("FOIA")

and the Privacy Act. The action stems from Plaintiff's attempts to show that his post traumatic stress disorder ("PTSD") was incurred before his release from the U.S. Army in Vietnam and that his honorable discharge should be changed to one for medical disability.

### I. *Background.*

Lee Burkins entered active duty on January 19, 1968, serving in Vietnam as a Green Beret with the 5th Special Forces Group. Defs.' Ex. DX1 at 5. By the end of his tour of duty, he had attained the rank of sergeant and had been awarded the Bronze Star, the Army Commendation Medal and the Combat Infantryman Badge. *Id.* Following a separation physical on November 4, 1970 he was found medically qualified for separation and was transferred to the Reserve Control Group. *Id.* Plaintiff claims he began to develop hives, sweats, panic attacks, sleep disturbance, irritability and considered himself to be "very violent" immediately before separation. Pl.'s Mem.Br.Opp.Defs.' Mot. Summ.J. ("Pl.'s Mem.") at 3. Although Plaintiff was hospitalized for several days before his separation with an unspecified fever, at the time of his examination in 1970, he stated "I feel that I am presently in good physical condition." Defs.' Ex. DX1 at 5.

On February 18, 1982 Plaintiff enlisted in the Hawaii Army National Guard ("HARNG"). He was promoted to the rank of staff sergeant on November 6, 1983. *Id.* During a field exercise in June 1984 he became hysterical, screaming "NVA in the compound" and firing blanks from his M–16 in the faces of his fellow soldiers. *Id.* at 5, 23, 24. He also grabbed another HARNG member and attempted to tie him up while shouting in Vietnamese. *Id.* at 23. Later that month, Burkins told one of his superiors that he was quitting the National Guard because of stress problems. *Id.* at 22. Plaintiff said his feelings were "out of control," and that training had become "too real" for him. *Id.* He said he felt like he was back in Vietnam and was worried that he would hurt someone.

*Id.* Although he was told he could not quit the HARNG for these reasons, Burkins left, going absent without leave ("AWOL"). In his absence, Plaintiff was added to the inactive duty rolls on July 2, 1984 when unit administrator Douglas Tom allegedly signed Burkins' name to a transfer request without his permission. Defs.' Mem. at 3.

On March 18, 1987, during a periodic physical examination, Burkins told the physician that he was seeing a psychiatrist for combat-related stress. Defs.' Ex. DX1 at 5. Burkins received therapy from September 1984 to the end of 1989, with several doctors diagnosing his PTSD as caused during his service in Vietnam. *See* Defs.' Ex. DX1 28–41, Pl.'s Ex. PXA. The examining physician still found Plaintiff medically qualified for retention. Defs.' Ex. DX1 at 5.

On November 24, 1987, the Veterans Administration awarded Burkins a 10 percent disability rating for PTSD, retroactive to March 11, 1987. *Id.* at 6. In a decision dated July 18, 1991, his rating was increased to 100 percent. *Id.* Plaintiff's request for a physical disability retirement or separation retroactive to November 4, 1970 was denied. The Office of the Surgeon General determined Plaintiff may have been suffering delayed onset of PTSD, but had met medical retention standards at the time of his separation, making its recommendations to Defendant Army Board for Correction of Military Records (ABCMR)[1] *Id.* The ABCMR was told by the Physical Disability Agency (USAPDA) that Burkins was suffering from PTSD in 1984, but was ineligible for disability processing at that time because his disability was caused by an "illness" rather than an "injury." *Id.*

The ABCMR concluded that although Plaintiff presently has PTSD, there was no evidence to indicate that he had it before his separation from active duty on November 4, 1970. *Id.* at 8. The ABCMR decided that Plaintiff, as a member of the reserves, was not eligible for disability processing for PTSD until after November 15, 1986. *Id.*

---

1. The ABCMR is an administrative body composed of civilians and is established pursuant to 10 U.S.C. § 1552. *Smith v. Marsh,* 787 F.2d 510, 511 n. 2 (10th Cir.1986). The Secretary of the Army, acting through the ABCMR, may correct any military record when he considers it necessary to correct an error or remove an injustice. *Id.*

Had Burkins been referred for disability processing after the facts of his PTSD were revealed in his March 18, 1987 physical examination, his condition would have been rated 50 percent disabling by Army standards, the ABCMR ruled. Plaintiff's records were corrected to reflect a 50 percent disability retroactive to March 18, 1987. *Id.* Plaintiff has requested injunctive and mandamus relief to compel the ABCMR to correct his records to reflect a disability discharge, asserting its decision was arbitrary and capricious.

## II. *Applicable Standards.*

Dismissal of an action pending in federal district court is appropriate where the federal court lacks subject matter jurisdiction over the action. Fed.R.Civ.P. 12(b)(1); *Stewart v. U.S.*, 199 F.2d 517, 519 (7th Cir.1952). Dismissal of an action is also appropriate where the complaint fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

When ruling on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the complaint is construed in the light most favorable to the plaintiff and the allegations are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In determining the sufficiency of the complaint, a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon mere allegations or denials in the plead-

ings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Summary judgment will be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

## III. *Motion to Dismiss*

### A. *Jurisdiction as to the first claim for mandamus and injunctive relief.*

Plaintiff's first claim seeks mandamus and injunctive relief against the ABCMR for correction of his military records. Defendants first challenge this court's jurisdiction over this claim. Therefore, I address Defendants' motion to dismiss in light of Fed.R.Civ.P. 12(b)(1).

Defendants contend Plaintiff's first claim must be dismissed because he has not established a federal question and the United States has not waived its sovereign immunity. Defs.' Mem. at 8. It is well established, however, that military decisions and actions are reviewable by the judiciary to determine whether the secretary has acted within the sphere of his statutory and constitutional authority. *Kalista v. Secretary of Navy,* 560 F.Supp. 608, 611 (D.Colo.1983) (finding jurisdiction under 28 U.S.C. §§ 1331 and 1361 in action to compel Board for Corrections of Naval Records to upgrade discharge). As a preliminary matter, a person must first exhaust the administrative remedies provided by the military service before seeking to have a military record reviewed and corrected in civil court. *See Thornton v. Coffey,* 618 F.2d 686, 692 (10th Cir.1980).

Plaintiff has exhausted all administrative remedies with the ABCMR in attempting to correct his records.[2] He has also alleged the ABCMR's decision is arbitrary and capricious and not in conformity with duties created by the board's own regula-

---

**2.** Pl.'s Mem. at 12. For a discussion of the exhaustion requirement, see *Kaiser v. Secretary of*

*Navy,* 542 F.Supp. 1263, 1265–66 (D.Colo.1982).

tions.[3] Plaintiff claims the fundamental mistake made by the ABCMR is that it failed to consider his assertions that the unconstitutional and illegal acts of Defendants prevented the board from being able to determine whether his non-medical discharge was correct. Thus, having exhausted all administrative remedies, Plaintiff's action to compel the ABCMR to correct his records properly presents a federal question over which this court has jurisdiction.

■ Defendants next challenge this court's jurisdiction by asserting Plaintiff's first claim for relief is essentially one for money damages since he ultimately seeks a retroactive disability discharge, with the appropriate back disability pay. Mem.Supp.Defs.' Mot. at 11. Since this back pay would exceed $10,000, Defendants argue the Tucker Act should give the Court of Claims exclusive jurisdiction under 28 U.S.C. § 1346(a)(2). Plaintiff counters that any *later* attempt by him to seek benefits from the VA is an administrative matter—all he is asking for from this court is equitable relief in the form of a correction of his records. Pl.'s Mem. at 15.

The Tucker Act (codified at 28 U.S.C. §§ 1346, 1491) grants concurrent jurisdiction to the district court and the Claims Court (formerly the Court of Claims) over money claims against the United States not exceeding $10,000.[4] *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985). For claims against the United States involving amounts greater than $10,000 founded upon the Constitution, Acts of Congress, executive regulations, or contracts, the Act vests *exclusive* jurisdiction with the Claims Court. *Id.* The Tenth Circuit has

indicated that when the "prime objective" or "essential purpose" of the complaining party is to obtain money from the federal government (in an amount in excess of $10,000), the Claims Court's exclusive jurisdiction is triggered. *Hamilton Stores, Inc. v. Hodel,* 925 F.2d 1272, 1278 (10th Cir.1991). The Tenth Circuit, however, has not reached the issue within the context of correction of military records. Thus, the "essential purpose" test does not necessarily apply to Plaintiff's equitable claim against the ABCMR. Moreover, the majority of cases from other circuits have held that such a claim does not automatically fall within the Tucker Act.[5]

Plaintiff himself recognizes that if his requested equitable relief is granted, the VA will likely award him retroactive disability benefits. *See* Pl.'s Am.Compl. at 14–15, ¶ 46. The question is whether such a collateral award of more than $10,000 in benefits incidentally resulting from equitable relief brings the action within the exclusive jurisdiction of the Claims Court under the Tucker Act.

Some courts facing this dilemma have examined plaintiffs' equitable claims with an eye to the probable effects that will result if relief is granted. *See Heisig v. Secretary of the Army*, 554 F.Supp. 623, 627 (D.D.C.1982), *aff'd*, 719 F.2d 1153 (Fed.Cir.1983). However, "[a] claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff." *Vietnam Veterans v. Secretary of Navy*, 843 F.2d 528, 534 (D.C.Cir.1988). In *Melvin v. Laird*, the plaintiff sought declaratory and injunctive relief to correct his records, claiming that his court-martial proceedings were unconstitutional:

---

3. 32 C.F.R. § 581.3(c)(5)(v) states that when the ABCMR denies an application, it must issue a "[b]rief statement of the grounds for denial [which] shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations rejected ..."

4. The district court can also retain jurisdiction if the plaintiff waives all claims to damages over $10,000. *Hahn v. United States*, 757 F.2d 581, 587–88 (3d Cir.1985). Mr. Burkins has not waived in this case.

5. In an unpublished opinion, the Fourth Circuit also followed this reasoning in the recent case of *Powe v. Secretary of Navy*, No. 94–1258, 1994 WL 445695 (4th Cir. Aug. 18, 1994) (Although plaintiff's ultimate goal was monetary relief from his requested backdated promotion, "[a] suit which does not seek monetary damages does not arise under the Tucker Act simply because the plaintiff's success will result in eventual monetary gain from the government").

[D]efendants urge that, because a judgment favorable to plaintiff here may give rise to substantial monetary liability—well in excess of $10,000—against the United States for back pay, this court is ousted of subject matter jurisdiction. The superficial appeal of this position arises from the fact that while the Court of Claims can grant both monetary and other relief, the district courts do not have jurisdiction to render money judgments in excess of $10,-000.

365 F.Supp. 511, 518 (E.D.N.Y.1973). The court cited *Carter v. Seamans*, 411 F.2d 767 (5th Cir.1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970), as a case in which the court declined jurisdiction. *Id.* at 519. The *Carter* court held that while it had mandamus jurisdiction under 28 U.S.C. § 1361, it would decline to exercise it since the action was essentially for a money judgment it could not grant—an injunction prohibiting the defendant from withholding all pay and allowances, estimated at $135,000. *Melvin*, 365 F.Supp. at 519. The court in *Melvin* distinguished the case before it from *Carter*, saying the plaintiff

[s]eeks only collateral review of his conviction by this court, based upon his claim that he was deprived of his constitutional rights to confront his accusers and to effective assistance of counsel. Plaintiff may seek back pay at a later date; but whether he does or not, and whatever amount he may seek, this court's jurisdiction to determine the issues now before it is not affected.

*Id.* at 520.

Although he does not cite *Melvin*, Plaintiff echoes this reasoning in arguing the equitable relief he seeks is distinct from any possible future efforts to obtain benefits:

In this case, if Plaintiff wishes to be paid VA benefits from November 5, 1970 through March 18, 1987, Plaintiff has elected to first change his service records from an Honorable Discharge to a Medical Discharge and, if successful, later seek benefits from the VA based upon the corrected records.

However, the actual seeking of benefits from the VA after Plaintiff's discharge records are corrected is an *administrative* matter, under 38 C.F.R. § 3.155(a) and 38 C.F.R. § 3.157(a), that will proceed through the Board of Veterans Appeals, not this Court.

Pl.'s Mem. at 15. An examination of other cases shows that as long as Plaintiff is not *presently* seeking relief in the form of back pay or benefits and such relief would only be collateral to his equitable claim, this court is not divested of jurisdiction by the Tucker Act.

One source for guidance in such cases is the Federal Circuit, which has exclusive jurisdiction for Tucker Act appeals in cases involving non-tort monetary damages pursuant to 28 U.S.C. § 1295(a).[6] *See Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439 (Fed.Cir.1984). For example, in *Ben-Sha-*

---

**6.** In addition to claiming that the "essence" of Plaintiff's claim is one for monetary damages, Defendants also assert that this court's decision should be *controlled* by the rulings of the Federal Circuit in Tucker Act cases. Mem.Supp.Defs.' Mot. Dismiss at 12, n. 9. However, although the Federal Circuit may be informative on the issue, other circuits have refused to deviate from the general principle that a federal court may determine its own jurisdiction. *See Chabal v. Reagan*, 822 F.2d 349, 355 (3d Cir.1987) (listing other circuits who have inquired into the amount of back pay sought as a means of determining whether or not jurisdiction is proper); *Vietnam Veterans*, 843 F.2d at 534; *Wolfe v. Marsh*, 846 F.2d 782 (D.C.Cir.1988), *cert. denied*, 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 355 (1988).

*Van Drasek v. Lehman*, 762 F.2d 1065, 1071 (D.C.Cir.1985), cited by Defendants, is distin-

guishable. In that case, plaintiff's amended complaint expressly sought money not exceeding $10,000 from the United States. It was framed as a request for a writ of mandamus ordering the defendants to award all back pay to which plaintiff would be entitled had he been promoted. *Id.* at 1067, 1071 n. 11. In this case, Plaintiff's claim is for equitable relief and may only have *collateral* consequences of monetary recovery.

Similarly, in *Chabal*, 822 F.2d at 356, the Third Circuit held that the only claim asserted by plaintiff that could be arguably covered by the Tucker Act was one for back pay or prospective pay. The plaintiff's non-monetary claim for reinstatement and his monetary claims based on due process violations did not require the district court to exercise jurisdiction under 28 U.S.C. § 1346. *Id.* But see *Denton v. Schlesinger*, 605 F.2d 484, 488 (9th Cir.1979).

*lom v. Secretary of Army*, 807 F.2d 982, 987 (Fed.Cir.1986), the court held the Tucker Act was inapplicable to an equitable action for reinstatement despite the fact the complaint may have "[i]mplicitly sought backpay as a part of the remedy for her illegal discharge." Therefore, it decided it could not hear the appeal under 28 U.S.C. § 1295(a) since the lower court's jurisdiction was predicated on 28 U.S.C. §§ 1331, 1361, 1651 and was *not* based in whole or in part on § 1346. *Id.*

Cases from the D.C. Circuit similarly show that money damages "implicit" in or "collateral" to an equitable claim do not invoke Tucker Act jurisdiction. In *Vietnam Veterans*, 843 F.2d at 534, the court held that where a plaintiff seeking a discharge upgrade neither seeks nor is granted monetary relief, the mere fact that a government payment of money is an automatic concomitant of the requested relief does not support Little Tucker Act jurisdiction. *Wolfe v. Marsh*, 846 F.2d 782, 783 (D.C.Cir.1988). In *Wolfe*, the D.C. Circuit addressed a motion to transfer a claim to the Federal Circuit under 28 U.S.C. § 1295(a) because the plaintiff alleged the district court had purported to base its jurisdiction in part on the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *Id.* This was despite the fact that the plaintiff had sought *only* injunctive relief to reverse the ABCMR's decision not to reinstate him or upgrade his discharge. However, the court found that

> [c]ollateral consequences of equitable relief do not implicate the Little Tucker Act, and therefore the district court did *not* in fact have jurisdiction under the Little Tucker Act, as the plaintiff had never made a *claim* of money damages, only a *waiver* of collateral relief in excess of $10,000.

*Id.* at 784. The court held that 28 U.S.C. § 1295(a) did not bar it from hearing the appeal. *Id.* at 785. The case also gives some guidance to district courts on the applicability of the Tucker Act to equitable claims:

> The district court should not assume Little Tucker Act jurisdiction over implicit claims, [citation omitted] *but only over explicit claims for monetary relief.* This bright line rule is especially appropriate in the area of Little Tucker Act jurisdiction, as the basis of the district court's jurisdic-

tion also controls the jurisdiction of the appellate court.

*Id.* at 784–85 (emphasis added). Although *Wolfe* and *Vietnam Veterans* dealt specifically with the scope of the *Little* Tucker Act, it would be anomalous to look at the collateral consequences of equitable claims in determining Claims Court jurisdiction but not in setting that of the district courts.

Although the case law in the D.C. and Federal circuits appeared unsettled regarding "implicit" claims for money damages at the time of *Heisig* (cited by Defendants), both courts have since rejected arguments by the government that the Claims Court's exclusive jurisdiction applies when a plaintiff does not explicitly request back pay or benefits. *See Steffan v. Cheney*, 733 F.Supp. 115, 120 (D.D.C.1989). Therefore, this court has jurisdiction pursuant to 28 U.S.C. § 1361 over Plaintiff's first claim for relief. Accordingly, I deny Defendants' motion to dismiss the first claim for lack of subject matter jurisdiction.

**B.** *Failure to state a claim for relief as to the first claim for mandamus and injunctive relief.*

Defendants also assert that Plaintiff has failed to allege the necessary prerequisites for mandamus relief in his first claim. Because this allegation attacks the legal sufficiency of Plaintiff's claim, I address it in light of Fed.R.Civ.P. 12(b)(6).

For mandamus to issue, there must be a clear right to the relief sought, a plainly defined and peremptory duty on the part of respondent to do the action in question, and no other adequate remedy available. *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir.1990). Petitioner must also show that his right to the writ is "clear and indisputable." *Id.*

In this case, Plaintiff asserts that the ABCMR should have changed his military records to show a medical discharge from the service in Vietnam on November 4, 1970 which change would allow him to qualify for disability benefits from the Veterans Administration due to his PTSD, retroactive to 1970. Citing 10 U.S.C. § 1201, Plaintiff ar-

gues that he became "unfit" to perform the duties of his office and rank because of PTSD which he incurred while entitled to basic pay in Vietnam. Plaintiff alleges that the ABCMR's refusal to change his military record to reflect a medical discharge as of November 4, 1970 was arbitrary and capricious because it failed to consider the delayed onset of PTSD. Viewing these allegations in a light most favorable to Plaintiff, I find Plaintiff's claim for mandamus legally sufficient to withstand a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Accordingly, I deny Defendants' motion on this ground.

## C. *Jurisdiction as to the second claim under the FTCA.*

### 1. *Exhaustion of Administrative Remedies/Statute of Limitations.*

The FTCA imposes two main burdens on those filing tort claims against the United States: a requirement that they exhaust administrative remedies before pursuing judicial action, and a time limit after which their claims become invalid. *See* 28 U.S.C. §§ 2401, 2675(a). Plaintiff asserts he has essentially met these requirements, or if his compliance was somewhat defective, the statute of limitations should be equitably tolled.

Initially, 28 U.S.C. § 2401(b) sets a two-year statute of limitations during which FTCA claims must be made to the agency:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

In addition, the FTCA requires that all administrative remedies be exhausted before a claimant can seek judicial redress:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

It is within the context of these statutes that the timing of Plaintiff's FTCA claim submission and initiation of judicial action should be reviewed.

### a. *Timing of Presentation.*

■ Both code sections at issue (§§ 2401(b) & 2675(a)) hinge on the question of whether or not Plaintiff's claim was timely and properly presented to the agency.[7] This notice to the appropriate agency is crucial because the requirements of § 2675(a) are jurisdictional. *See Bradley v. United States,* 951 F.2d 268, 270 (10th Cir.1991); *Nero v. Cherokee Nation of Okla.,* 892 F.2d 1457, 1463 (10th Cir.1989). A district court will not have subject matter jurisdiction over an FTCA claim until 1) it has first been rejected by the agency or 2) six months have passed without rejection since its submission. In addition, presentation must be made within two years of the accrual of a claimant's cause of action and suit must be filed within six months of the agency's denial of a claim. *See* 28 U.S.C. § 2401(b).

---

7. The Code of Federal Regulations states:

> For purposes of the provisions of 28 U.S.C. §§ 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized legal representative, an executed Standard Form 95 *or other written notification* of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

28 C.F.R. § 14.2(a) (emphasis added).

Plaintiff did not submit his FTCA Standard Form 95 ("SF95") until March 31, 1994, almost six months after he filed his initial pro se complaint in this action.[8] Pl. Mem. at 28. No matter what date one determines Plaintiff's cause of action accrued, this claim cannot qualify as a validly presented claim under § 2675(a) because it was presented to the agency *after* this suit was filed and on the same day that Plaintiff's complaint was amended to include his FTCA claim. The Supreme Court has held that Congress has expressly prohibited such a sequence of events, and has required complete exhaustion of executive remedies *before* suit can be filed. *See McNeil v. United States*, —— U.S. ——, ——–——, 113 S.Ct. 1980, 1983–84, 124 L.Ed.2d 21 (1993).

Alternatively, Plaintiff argues that a written statement he made to the ABCMR on September 21, 1989 satisfies the claim notice requirement, since he requested "[a]ll benefits be provided as such separation of duty allows." Pl.'s Mem. at 29. Since 28 C.F.R. § 14.2(a) does allow "other written notification" in lieu of a SF95, the question becomes whether Plaintiff's written statement was 1) informationally adequate notice to the agency under § 2401(b) and 28 C.F.R. § 14.2(a), and was 2) submitted within two years of the time his cause of action accrued.

b. *Adequacy of Presentation.*

In order to provide adequate notice to the appropriate agency under the FTCA, a plaintiff must specify "sum certain" damages in his claim submission. *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir.1992); 28 C.F.R. § 14.2(a). The purpose of the sum certain requirement is to facilitate settlement and to inform the agency whether [the] claim is for more than $25,000 and the approval of the Attorney General is needed to settle a claim under 28 U.S.C. § 2672. *Lundgren v. United States*, 810 F.Supp. 256, 258 (D.Minn. 1992).

In his written statement to the ABCMR in September 1989, Plaintiff requested "[a]ll benefits be provided as such separation of

duty allows." Pl.'s Mem. at 29. Plaintiff's amended FTCA claim (SF95) submitted to the Department of the Army claims $200,000 in property damages and $400,000 in personal injury damages. Pl.'s Mem.Ex. PJX at 1.

Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the Act must be strictly construed. *Cizek*, 953 F.2d at 1233 (plaintiff's characterization of damages on SF95 as "ongoing" for personal injury claim not sum certain). Plaintiff did not specify an amount of alleged damages, or a percentage of disability sustained as a result of his PTSD. In addition to the vagueness of his request, the disparity between Plaintiff's September 21, 1989 request and the amount in his SF95 amended claim also indicates his presentation was inadequate. *See Bradley*, 951 F.2d at 270 (request for damages "in excess of $100,000" not sum certain).

The Tenth Circuit addressed a claim similar to Plaintiff's in *Kendall v. Watkins*, 998 F.2d 848 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994), holding it was too general to constitute a "sum certain:"

> Although one of the letters stated that plaintiff intended to bring suit against the agency and generally outlined the type of relief wanted, *i.e.*, reinstatement, back pay, front pay, damages for alleged blacklisting, and disciplinary action against certain federal employees ... none of the letters stated a claim for a sum certain.

*Id.* at 852. The burden is on the claimant to provide sufficient information regarding the nature and merits of his claim so far as liability is concerned. *Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir.1983), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Plaintiff did not meet this burden, and his claim was therefore *never* adequately presented—regardless of

---

8. Plaintiff also submitted his First Amended Complaint on March 31, 1994, in which he dropped a claim for three years of veterans bene-

fits and added claims under the FTCA and FOIA. *See* First Am.Compl. at 1.

when the limitations period of 28 U.S.C. § 2401(b) began.[9]

 Plaintiff alternatively asserts the statute of limitations should be tolled and presentation excused because his September 21, 1989 statement/claim was submitted to the wrong agency (the ABCMR) and the agency violated its duty under 28 C.F.R. § 14.2(b)(1) to transfer the claim to the appropriate agency. Pl.'s Mem. at 29. Such a scenario assumes that the claimant presented an otherwise adequate claim to the inappropriate agency. *Greene v. United States,* 872 F.2d 236, 237 (8th Cir.1989) and *Bukala v. United States,* 854 F.2d 201, 203–04 (7th Cir.1988), cited by Plaintiff, held that a claim timely filed with an incorrect agency shall be deemed timely presented to the appropriate agency if it was never transferred pursuant to 28 C.F.R. § 14.2(b)(1). Such a result is in keeping with the intent of Congress:

> Interpreting the transfer regulation to allow for constructive filing (*i.e.,* a relation back) of claims presented within the limitations period of § 2401(b) but delivered to the wrong agency and neither transferred to the proper agency nor returned to the claimant, is both logical as well as fair and equitable.

*Bukala,* 854 F.2d at 203.

 A claimant who has presented an *inadequate* FTCA claim to the inappropriate agency does not present as compelling a case for constructive filing or relation back. In *Adkins v. United States,* 896 F.2d 1324, 1326 (11th Cir.1990), the Eleventh Circuit held that an agency's failure to comply with another rule from the same part requiring a written final denial of a claim (28 C.F.R. § 14.9(a)) still did not excuse a claimant's

inadequate claim. Similarly, the ABCMR's failure to transfer Plaintiff's request as a FTCA claim to the Department of the Army cannot make up for Plaintiff's inadequate presentation. This court is therefore without jurisdiction to hear his FTCA claim. Although the determination of when the Plaintiff learned of the existence of his claim would normally present an issue of fact,[10] I do not reach a decision on the exact timing of accrual because Plaintiff failed to satisfy the claim presentation requirements at *any* time between August 1988 and the present. *See* 26 U.S.C. §§ 2401(b), 2675(a); 28 C.F.R. 14.2(a).

2. *Torts involving deceit or misrepresentation under the FTCA.*

Defendants also contend that Plaintiff's claim for invasion of privacy is barred by the misrepresentation exception to the FTCA, which disallows actions for

> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights ...

28 U.S.C. § 2680(h). Plaintiff argues that liability for FTCA purposes is determined by the law of the state, and since Hawaii recognizes the tort of invasion of privacy his claim should be allowed to go forward. Pl.'s Mem. at 27–28.

Plaintiff has missed a subtle distinction between the scope of liability under the FTCA and the extent of the § 2860(h) exceptions. Whether a state has seen fit to allow recovery under a particular cause of action does not answer the question of "[w]hether this claim is outside the intended scope of the

---

9. Although in his SF95 amended claim Plaintiff *did* specify a sum certain, he did not submit it until March 31, 1994, almost six months after he filed the complaint in this action. Pl.Mem. Br.Opp.Defs.' Mot. at 28. The amended claim therefore did not comply with 28 U.S.C. § 2675(a) and must also fail.

10. A cause of action accrues under the FTCA when "[t]he plaintiff had reason to suspect or was aware of facts that would have alerted a reasonable person to the possibility that a legal duty had been breached." *United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 360, 62

L.Ed.2d 259 (1979). The limitations period of § 2401(b) begins to run when plaintiff learns of the operative facts surrounding his injury and its cause, not when he becomes aware that the harm was negligently inflicted. *Id.* at 123, 100 S.Ct. at 360. The time when a cause of action accrues under the statute must be determined in light of all the surrounding circumstances. *Schell v. National Flood Insurers Association,* 520 F.Supp. 150, 154 (D.Colo.1981). Plaintiff's cause of action accrued "[w]hen his right to resort to federal court was perfected." *White v. Secretary of Army,* 629 F.Supp. 64, 67 (D.D.C.1984).

Federal Tort Claims Act, which depends *solely* upon what Congress meant by the language it used in § 2680(h)." *United States v. Neustadt,* 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961) (emphasis added). The Supreme Court has also focused inquiry on the conduct upon which a plaintiff's claim is based. *See Sheehan v. United States,* 896 F.2d 1168, 1171 (9th Cir. 1990). Regardless of a plaintiff's characterization of his cause of action, § 2680(h) bars suit for claims based on conduct which constitutes one of the excepted torts, and bars suit for no other claims. *Id.* However, a partial overlap between a plaintiff's alleged tort action and one for misrepresentation or deceit does not necessarily mean it is excepted. *See Block v. Neal,* 460 U.S. 289, 298, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983).

▮ The essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies. *Id.* at 296, 103 S.Ct. at 1093. Under the Restatement (Second) of Torts, one who invades the privacy of another is liable for resulting harm when there is an "unreasonable intrusion upon the seclusion of another" (§ 652B), or "appropriation of the other's name or likeness" (§ 652C), or "publicity that unreasonably places the other in a false light before the public" (§ 652E). *Lee v. Calhoun,* 948 F.2d 1162, 1165 (10th Cir.1991). Although Plaintiff alleges Defendants violated all three theories of liability, false light publicity does not appear applicable to the facts alleged.

▮ In his First Amended Complaint, Plaintiff's second claim alleges that Defendant Tom signed the Plaintiff's signature to a 1984 Request for Transfer to Inactive Duty, resulting in Plaintiff not receiving a medical examination which would have revealed the service connection of his PTSD. Pl.'s Am. Compl. at 15, ¶ 48. Although this assertion may on its face state a claim for appropriation of Mr. Burkins' name,[11] Plaintiff also alleges that while investigating the forgery,

Defendant Patrick knew of the falsification of the records yet negligently stated that Plaintiff had not been denied veterans' entitlements. Complaint at 15, ¶ 49.

Patrick's actions appear to fall clearly within the misrepresentation exception to the FTCA. If there is any doubt that Patrick's act was the communication of information upon which the recipient relied, one need look no further than Plaintiff's own assertions. In arguing that the statute of limitations should be tolled on his FTCA claim, Plaintiff alleges:

> Moreover, this is a case where the government's active or fraudulent concealment of its role in the injury-causing event postpones accrual of Plaintiff's claim ... Or this is a case where the government's continuing assurances to the Plaintiff that he was not entitled to any medical care in 1984 postponed the statute of limitations ...

Pl.'s Mem. at 29–30. Plaintiff cannot simultaneously argue he should be given equitable relief from the statute of limitations because he relied on misinformation given to him by the Defendants, while claiming the misinformation does not fall within the misrepresentation exception to the FTCA.

### 3. *The Feres Doctrine.*

▮ The government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity "incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950); *Durant v. Neneman,* 884 F.2d 1350, 1352 (10th Cir.1989). The court has noted three rationales underlying the *Feres* doctrine: " '(1) the distinctly federal nature of the relationship between the government and members of the armed forces ...; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure.' " *Madsen v. United States,* 841 F.2d 1011, 1013 (10th

---

11. Comment (b) to § 652C of the Restatement (Second) of Torts states that a name is normally appropriated for a commercial or business purpose, but the principle "[a]pplies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one."

Cir.1987) (quoting *Atkinson v. United States,* 825 F.2d 202, 204 (9th Cir.1987)).

■■■ Plaintiff argues the *Feres* doctrine should not apply to his FTCA suit because he was AWOL and not on "active duty" when the injury occurred. Pl.'s Mem. at 34. Alternatively, he asserts Defendants Tom and Patrick were engaged in nonmilitary acts.[12]

a. *Plaintiff's AWOL Status.*

■■■ Although the Tenth Circuit has repeatedly emphasized the importance of the status of the servicemember in determining the applicability of the *Feres* doctrine, *see Whitham v. United States,* 765 F.Supp. 674, 676 (D.Kan.1991), the court has made it clear that active duty status is *not* necessary for the "incident to service" test to apply. *See Quintana v. United States,* 997 F.2d 711, 712 (10th Cir.1993). So regardless of whether an AWOL soldier can be considered on "active duty" for *Feres* purposes, he still cannot recover for injuries sustained incident to military service.[13]

Other cases are persuasive that a service member's AWOL status does not, in and of itself, remove a case from the ambit of the *Feres* doctrine. *See, e.g., Maw v. United States,* 733 F.2d 174, 175–76 (1st Cir.1984). In *Maw,* the plaintiff filed a FTCA suit for injuries arising out of his arrest by civilian police pursuant to an AWOL Apprehension Warrant. *Id.* The court acknowledged that while the plaintiff was, perhaps, not on active duty at all relevant times, he could not assert that he was " 'under compulsion of no orders or duty and no military mission.' " *Id.* at 175 (quoting *Feres,* 340 U.S. at 146, 71 S.Ct. at 159). The plaintiff also could not claim he " 'was not subject to military discipline.' " *Id.* at 176 (quoting *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954)). *See also Anderson v. United States,* 724 F.2d 608, 611 (8th Cir.1983); *Tipton v. United States,* No. 84 C 6577, 1985 WL 1660 (N.D.Ill. May 31, 1985).[14] Therefore, if his injuries resulted "incident to military service," Plaintiff's suit is barred by *Feres.*

■■■ Although the "distinctly federal relationship" between Plaintiff and the government at the time of his injury may have become somewhat attenuated as a result of his AWOL status, the forgery of Plaintiff's records and subsequent investigation clearly occurred incident to his military service. To delve into the acts of the Defendants and the investigation surrounding Plaintiff's injury would in all likelihood require judicial second-guessing of military orders.[15] For these

---

12. Plaintiff also argues Defendants Tom and Patrick violated a nondiscretionary duty not to falsify, conceal, or cover up any fact or make any false statement, removing their actions from *Feres* protection. Although Plaintiff cites *Aslakson v. United States,* 790 F.2d 688 (8th Cir.1986) for this proposition, *Aslakson* deals instead with the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a). *Feres* immunity applies irrespective of whether the officer's allegedly negligent act was discretionary or ministerial. *See Hefley v. Textron, Inc.,* 713 F.2d 1487, 1492 (10th Cir.1983). The discretionary function exception is an express exception to the Federal Tort Claims Act. *Id.* The *Feres* doctrine is a separate, judicial exception to the FTCA. *Id.* Plaintiff's argument is therefore inapposite to Defendants' assertion of immunity based on the military identity of the parties.

13. See, for example, other cases in which plaintiffs were precluded from filing suit despite the fact that they were not on ordinary, active service: *Berry v. United States,* 772 F.Supp. 563 (D.Kan.1991) (Plaintiff's malpractice suit barred despite the fact that he was on Temporary Disability Retirement Leave at time of injury); *Walden v. Bartlett,* 840 F.2d 771, 774 (10th Cir.1988)

(Military prisoner barred from bringing suit: "The Supreme Court has rejected the argument that service members sentenced by court-martial cease to be soldiers and are no longer subject to military law."); *Appelhans v. United States,* 877 F.2d 309, 313 (4th Cir.1989) (Medical treatment of serviceman on "excess leave" incident to service).

14. *McGowan v. Scoggins,* 890 F.2d 128, 129 (9th Cir.1989), cited by Plaintiff, is inapposite to this case because it involved a *retired* army serviceman who had been formally *discharged.* There was no doubt in McGowan's case that he was no longer a member of the armed forces or subject to the supervision of military personnel. *Id.*

15. The most distressing aspect of barring Plaintiff's claim under *Feres* relates to the second factor of the test created by the Supreme Court: "The availability of alternative compensation systems." In Plaintiff's case, it is the alleged tortious activity by Defendants which has deprived him of the right to take advantage of an alternative compensation which the Court has used as a justification in barring servicemembers' FTCA suits.

reasons, the Plaintiff's claim is barred by the *Feres* doctrine and this court is deprived of jurisdiction under the FTCA. As discussed below, Plaintiff's attempt to escape the *Feres* rule by asserting the non-military character of the acts of Defendants Tom and Patrick is also unavailing.

b. *Non–Military Acts of Tom and Patrick.*

■■ Plaintiff argues alternatively that *Feres* does not apply to his FTCA claim because Tom and Patrick were engaging in non-military acts. However, Plaintiff mischaracterizes the holding of *Durant v. Neneman*, 884 F.2d 1350 (10th Cir.1989) and the substance of his own complaint. Plaintiff's second claim for relief under the FTCA is asserted against the *United States*. It is therefore a "true *Feres* case," in which a plaintiff connected with the military asserts liability against the United States under the FTCA for injury arising out of activity which is incident to service. *Id.* at 1352. *Durant* dealt with a situation in which liability is asserted by a serviceman against a *military actor* for acts committed within the context of military service, instead implicating the doctrine of "intra-military immunity." *Id.* In *Durant* the plaintiffs brought suit for negligence, not an FTCA action. In such a case it is appropriate to ask if the defendant was engaged in the performance of a military act. However, "true" *Feres* cases face a broader wall of immunity. *See Durant*, 884 F.2d at 1354.

In *Durant*, the court emphasized the importance of the identity of the defendant— United States versus a military actor—in making a *Feres* determination regarding the scope of immunity:

> We distinguish this case from *Shaw v. United States*, 854 F.2d 360 (10th Cir.1988) where we held that an injury sustained while driving to one's place of duty was an injury incident to military service. *Shaw* is a classic *Feres* case which applies the

strict rationales *Feres* mandates. As we have already noted, intra-military actions giving rise to the issue of military immunity are judged by different standards.

*Id.* at 1354 n. 5. The court noted that the zone of protection for military actors was never intended to protect the personal acts of an individual when those acts in *no way* implicate the function or authority of the military. *Id.* at 1353. However, Plaintiff's FTCA action against the United States brings into play the stricter standards of immunity discussed by the court in *Shaw*. Plaintiff therefore cannot escape the *Feres* exception to the government's waiver of immunity by claiming the acts engaged in by Defendants Tom and Patrick were non-military.

For all the aforesaid reasons, I conclude I do not have jurisdiction to hear Plaintiff's FTCA claim. I therefore grant Defendants' motion to dismiss the second claim.

D. *Fourth claim under the Privacy Act 5 U.S.C. § 552a.*

■■ Defendants assert Plaintiff's fourth claim for relief under the Privacy Act, 5 U.S.C. § 552a is barred by the statute of limitations. Section 552a(g)(5) of the Privacy Act provides an action to enforce any liability created under § 552a must be brought within two years from the date on which the cause of action arose. *Mangino v. Department of the Army and Defense Investigative Service*, 818 F.Supp. 1432, 1437 (D.Kan.1993), *aff'd*, 1994 WL 55606 (10th Cir.1994).[16] The statute of limitations is jurisdictional, and it is the plaintiff's burden to establish the time limit has been met. *Id.*

Defendants claim Plaintiff's cause of action arose when he discovered the falsification of his records in August, 1988. Defs.' Mem. at 20. Plaintiff, on the other hand, argues that the limitations period began when he received a copy of the redacted inquiry Memorandum and Patrick's final report on July 7,

**16.** "An action to enforce any liability created under this section may be brought ... within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation." 5 U.S.C. § 552a(g)(5).

1992 in response to his FOIA request. Pl.'s Mem. at 37. Alternatively, Plaintiff claims the statute was tolled due to Defendants' "willful misrepresentation that documents and transcripts from the I.G.'s investigation are exempt from disclosure under FOIA, even if these documents directly *pertain* to Plaintiff." *Id.*

■ According to the Tenth Circuit, a cause of action under the Privacy Act arises when: 1) an error is made in maintaining plaintiff's records; 2) plaintiff is wronged by such error; and 3) plaintiff either knew or had reason to know of such error. *Bergman v. United States,* 751 F.2d 314, 316 (10th Cir.1984), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). If Plaintiff were *only* requesting access to his records, his cause of action would have accrued at the time he knew his request for access had been denied. *Englerius v. Veterans Administration,* 837 F.2d 895, 897 (9th Cir.1988). However, since damages are not allowable under cases brought *only* for access to records under § 552a(d)(1), Plaintiff has also asserted he was harmed by errors in his records pursuant to § 552a(g)(1). *See infra.* He has therefore asserted two harms under different sections of the Privacy Act, one of which—access under § 552a(d)(1)—should not be time-barred. Whether the other—for damages pursuant to § 552a(g)(1)—is time-barred depends on when Plaintiff became aware he had been harmed by errors in his records. It is this dual nature of his Privacy Act claim that makes it difficult to determine its time of accrual.

Plaintiff is essentially trying to separate the initial forgery of his records from the mistakes he alleges occurred in the resulting I.G. investigation. Plaintiff is not re-requesting access to the falsified document transferring him to inactive duty. *See* Pl.'s Mem. at 36. He is instead seeking any documents relating to the Inspector General's investigation of the forgery. *Id.* Plaintiff claims he "knew or had reason to know" of an error in his records on July 7, 1992 when Defendants denied his FOIA request and released part of the Inquiry Memorandum, in which a witness stated that Plaintiff *himself* had returned to his unit to sign the transfer request. *Id.* at

37–38. Plaintiff is therefore not attacking the validity of the forged transfer request, but is arguing he was ultimately harmed by erroneous documents produced during the I.G.'s investigation.

Plaintiff's harm may be viewed as a continuing transaction, from the time when his records were forged to the time when he learned the I.G.'s investigation concluded the forgery was not a factor in his denial of benefits. Thus, his action is still timely. Plaintiff set the administrative wheels in motion when he made his request to the ABCMR in September 1989. The ABCMR did not deny his request until July 1992. *See* DX1 at 4. His FOIA request was similarly not denied until July 1992. *See* DX3 at 1. A plaintiff is not required to rush into court and file suit upon learning that erroneous records may exist, but he or she has two years to investigate whether sufficient factual and legal bases exist for bringing a Privacy Act suit. *Mangino,* 818 F.Supp. at 1438. Plaintiff had begun such an investigation in 1989, but the ultimate results were not available to him until 1992.

Alternatively, § 552a(g)(5) states that the statute of limitations is tolled if an agency has "[m]aterially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual ..." 5 U.S.C. § 552a(g)(1). Accepting Plaintiff's claims of agency misrepresentation as true, the statute may have been tolled.

It does not appear beyond doubt that plaintiff is unable to prove a set of facts which would satisfy the statutory time limit. I deny Defendant's motion to dismiss Plaintiff's fourth claim for relief under the Privacy Act.

E. *Jurisdiction as to fifth claim under 42 U.S.C. § 1983.*

■ Defendants assert that Plaintiff has failed to plead and prove jurisdiction as to his § 1983 claim against Defendants Tom and Patrick, and that the *Feres* doctrine bars suit

against Patrick, a federal employee.[17] Defs.' Mem. at 5, 20–21. Defendants also argue Plaintiff's attempt to seek punitive damages against Patrick is barred by 28 U.S.C. § 2674. *Id.* In addition, Defendants claim Patrick could not have been acting under color of state law because he was a full-time officer of the U.S. Army under U.S.C. Title 10 during the relevant time periods involved. *See* Defs.' Reply at 4.

Plaintiff counters government officials are not shielded from civil liability when their alleged conduct violates clearly established law of which a reasonable person would have known. Pl.'s Mem. at 19. Plaintiff claims both Tom and Patrick were acting "under color. of Hawaii law" since both were acting pursuant to their National Guard training duties while in Hawaii.

■ As I hold Plaintiff's FTCA claims against the United States are barred by the *Feres* doctrine, so, too, his § 1983 claim fails on the same rationale—that the actions of Tom and Patrick were "incident to military service." Assuming for the moment that both Defendants could be considered "acting under color of state law," most courts addressing the issue have held the immunity provided to federal actors against *Bivens*-type[18] constitutional damage claims also extends to state actors facing § 1983 actions.[19]

The Supreme Court held in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), that military personnel cannot bring an action for monetary damages against superior officers for alleged constitutional violations pursuant to *Bivens*. *See Knutson v. Wisconsin Air National Guard*, 995 F.2d 765, 769 (7th Cir.1993). Although *Chappell* is not directly controlling, it has led some courts to apply similar restraint in reviewing intraservice military disputes alleging § 1983 violations. *See id.* In *Martelon v. Temple*, 747 F.2d 1348, 1351 (10th Cir.1984), the Tenth Circuit concluded that when Congress passed § 1983 it did not intend to create liability for military superiors for transgressions against the rights of other military personnel.

Other circuits have also held the policy considerations of *Chappell, Stanley,*[20] and *Feres* apply equally to actions brought under § 1983 by National Guard members. *See Watson v. Arkansas National Guard*, 886 F.2d 1004, 1007 (8th Cir.1989); *Knutson*, 995 F.2d at 770; *Wright v. Park*, 5 F.3d 586, 591 (1st Cir.1993) ("there is no principled basis for according state actors sued under 42 U.S.C. § 1983 a different degree of immunity than would be accorded federal actors sued for an identical abridgement of rights under *Bivens*."); *Crawford v. Texas Army National Guard*, 794 F.2d 1034, 1036 (5th Cir.1986) ("we perceive no basis upon which to distinguish [§ 1983 claims] from those held impermissible by *Chappell*."); *accord Jorden v. National Guard Bureau*, 799 F.2d 99, 108 (3rd Cir.1986).[21]

**17.** Plaintiff states in his First Amended Complaint that his § 1983 claim is an alternative to his *third* claim for relief. However, since his third claim for relief is predicated on the FOIA, it appears his fifth claim is actually an alternative to his *second* claim, brought pursuant to the FTCA against the United States.

**18.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Under *Bivens*, federal employees can be liable for damages stemming from violations of constitutional rights. *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 644 n. 2 (10th Cir.1988).

**19.** In their motion to dismiss, Defendants assert that Plaintiff's § 1983 claim should be dismissed only as to federal defendant Patrick, asserting the United States Supreme Court has made it clear that "the *Feres* doctrine applies to bar attempts to sue individual federal employees for alleged constitutional torts under the jurisdiction of 28 U.S.C. § 1331 via *Bivens.*" Mem.Supp.Defs.' Mot. at 20–21. However, cases from the majority of the circuits indicate that this prohibition against *Bivens* claims also extends to § 1983 actions brought against *state* National Guard officers. *See, e.g., Martelon v. Temple*, 747 F.2d 1348, 1349 (10th Cir.1984), in which the defendants were all officers of the Colorado Army National Guard.

**20.** *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

**21.** Some of the courts reached their decision by also considering the Supreme Court's holding in *Butz v. Economou*, 438 U.S. 478, 500–01, 98 S.Ct. 2894, 2907–08, 57 L.Ed.2d 895 (1978). *Butz* held that as far as the immunity of government officials is concerned, *Bivens* and § 1983 claims merit similar treatment. *See Knutson*, 995 F.2d at 770.

In *Maddick v. United States,* 978 F.2d 614 (10th Cir.1992), the court discussed the relationship of *Bivens* and *Feres* immunity:

In *Stanley,* the Supreme Court held that the military

> enjoys an immunity to *Bivens* claims that is coextensive with its *Feres* immunity. [citation omitted] We therefore review the record to determine whether Maddick's claims are for injuries incident to his military service. If we find that they are, the *Feres* doctrine applies, and the federal judiciary is without subject matter jurisdiction to hear any of the claims in this case."

Therefore, since the actions of Tom and Patrick would be considered "incident to military service" precluding suit under the FTCA due to the *Feres* doctrine, *see supra,* Plaintiff's § 1983 claims likewise should be dismissed. For this reason I need not reach the issue of whether Defendant Patrick, a U.S. Army colonel, was acting under color of state law and is subject to suit under § 1983.

In *Durant* the Tenth Circuit indicated that Plaintiffs filing intramilitary suits against military actors do not face as broad a wall of immunity as those suing the United States directly under the FTCA. *See Durant,* 884 F.2d at 1354. However, it made this distinction within the context of discussing plaintiff's negligence claims against other officers. None of the cases I have read have stated that intramilitary § 1983 claims should be given less scrutiny than *Feres* suits, despite the more lax standard discussed in *Durant.*

Even if a less strict test is used, Plaintiff's claims should still be barred. The court noted that the zone of protection for military actors was never intended to protect the personal acts of an individual when those acts in *no way* implicate the function or authority of the military. *Id.* at 1353. Tom and Patrick's actions in making personnel decisions and investigating allegations of wrongdoing directly implicate this military function and authority. I therefore grant Defendants'

motion to dismiss the fourth claim under 42 U.S.C. § 1983.

### IV. *Motion and Cross-motion for Summary Judgment.*

#### A. *First claim for mandamus and injunctive relief.*

##### 1. *Justiciability*

■ Defendants assert that summary judgment is warranted on Plaintiff's first claim because it presents an issue of military action that is not reviewable by civilian courts. In *Lindenau v. Alexander,* 663 F.2d 68, 74 (10th Cir.1981), the Tenth Circuit adopted the test created by the Fifth Circuit in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971) to decide whether review of military decisions is proper. Under the *Mindes* test, a plaintiff must first have alleged a violation of a constitutional right, applicable statute or regulation. *Lindenau,* 663 F.2d at 71. All intraservice remedies must also have been exhausted. *Id.* If these requirements have been met, the court then balances four considerations:

> ■ [T]he nature and strength of the challenge to the military determination, [2] the potential injury to the plaintiff if review is refused, [3] the type and degree of anticipated interference with the military function, and [4] the extent to which military discretion or expertise is involved in the challenged decision.

*Id.* [22] The extent of judicial review of the internal affairs of the military is narrow and restricted. *Schulke v. United States,* 544 F.2d 453, 455 (10th Cir.1976).

As a threshold matter, Plaintiff has satisfied the first two dictates of *Mindes:* he has alleged several constitutional, statutory and regulatory violations by Defendants and has exhausted all remedies with the ABCMR. Although the first of the four factors may weigh against Plaintiff because of the strict standard which must be applied in reviewing the ABCMR's decision (arbitrary and capri-

---

**22.** The *Mindes* test, as adopted in *Lindenau,* is still controlling within the Tenth Circuit despite the fact that some other circuits have rejected its reasoning on grounds that it "[i]ntertwines the concept of justiciability with the standards to be applied to the merits of [the] case." *Kreis v.* *Secretary of Air Force,* 866 F.2d 1508, 1512 (D.C.Cir.1989), *quoting Dillard v. Brown,* 652 F.2d 316, 323 (3rd Cir.1981); *see also Knutson v. Wisconsin Air National Guard,* 995 F.2d 765, 768 (7th Cir.1993).

cious), the second factor appears to cut in his favor.

If review is denied on his first claim, Plaintiff will be foreclosed from obtaining over 15 years' worth of disability benefits. Within the context of requiring the military to change a *medical* decision, it appears the third and fourth considerations of the *Mindes* test may not weigh as heavily against Plaintiff as they would with other more discretionary decisions. Defendants assert the opposite, claiming that a disability determination is akin to one recommending or denying a promotion. Defendants argue *Gonzalez v. Department of Army*, 718 F.2d 926 (9th Cir.1983) is therefore analogous. However, decisions regarding promotions appear far more subjective and discretionary than disability determinations. *Cf. Kreis*, 866 F.2d at 1510 (holding request for retroactive promotion nonjusticiable).

The decision made in Plaintiff's case hinges on when he contracted PTSD and the severity of his condition. It involves medical and psychiatric evaluations which, although somewhat subjective, should still adhere to a cognizable standard.

▇▇▇ Some cases have held that medical determinations relating to discharge should ordinarily be beyond the purview of the courts. *See Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985) (responsibility for determining physical fitness of service persons is that of the armed forces, not of the judiciary); *Mindes*, 453 F.2d 197, 200 (5th Cir.1971) (citing *Reaves v. Ainsworth*, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911) for proposition that Court refused to review plaintiff's medical records and determination of fitness as an officer). Military board decisions regarding medical fitness are, however, still subject to a limited amount of judicial review. *See Ferrell v. United States*, 23 Cl.Ct. 562, 567 (1991).[23] Although an argument could be made for increased deference to decisions made by military boards reviewing *combat-*

*related* psychological problems, case law does not support such a distinction.

### 2. *ABCMR's decision.*

▇▇▇ The decisions of the ABCMR are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence. *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). Plaintiff asserts the ABCMR's decision in his case is arbitrary and capricious because

> [i]t failed to consider the delayed onset of Post Traumatic Stress Disorder, the lack of a meaningful medical exam for the Plaintiff upon discharge from service in Vietnam, the Army's shame and ignorance of PTSD in 1970, Plaintiff's undisputed application for benefits within a year after serving in Vietnam, Plaintiff's nomadic homeless type existence after service in Vietnam, and other evidence showing that Plaintiff's records should be corrected either [sic.] to show a *medical* discharge effective November 4, 1970.

Pl.'s Am.Compl. at 13, ¶ 42.

The Claims Court examined a similar problem in *Ferrell*, 23 Cl.Ct. 562 (1991), in which the plaintiff attempted after he was discharged to show his back injuries were service-connected. The AFBCMR denied his request to change his discharge to one for medical disability. He had not been given a separation physical or MEB processing at the time of his discharge. *Id.* at 564. The court found these and other deviations from standard military procedure "troubling:"

> [T]he very reason a determination of fitness was not made was because of the failure to put [plaintiff's] discharge on medical hold. The Government thus confronts plaintiff with a "catch 22." [Plaintiff] has not shown himself to be disabled during service, and yet he was not given the opportunity to prove he was disabled through an MEB or a separation occupational physical because his voluntary resig-

**23.** A factor favoring review is Plaintiff's allegation that, but for the HARNG's failure to provide him with an appropriate medical examination at the time of his transfer, the ABCMR would have had an adequate record to determine that his

PTSD was service-connected. A similar situation was examined by the court in *Ferrell*, 23 Cl.Ct. at 569 (no separation physical or MEB evaluation at time of discharge), in which the court reviewed the ABCMR.

nation was processed, in the face of his request for a hold, and in the face of regulations which strongly counsel a hold in such circumstances.

*Id.* at 569. The court held the record contained substantial evidence that the plaintiff was partially disabled. *Id.* at 571. Although much of the evidence was post release, the court found that it was not inappropriate to consider it, particularly when the examination at the time of release was perfunctory. *Id.* The court overturned the ABCMR's decision as arbitrary and capricious. *Id.* at 572.

Summary Judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. United States,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The relevant facts with respect to Plaintiff's disability and the appropriateness of Defendant's actions are in dispute. Therefore, whether the ABCMR's decision was arbitrary and capricious presents a genuine issue of material fact. Accordingly Defendant is not entitled to judgment as a matter of law with respect to Plaintiff's first claim for relief.

### B. *Third claim for relief under FOIA.*

Defendants move for summary judgment on Plaintiff's Freedom of Information Act (FOIA) claim, asserting that the withheld inquiry memorandum forming the basis of Army Inspector General John Patrick's report falls within Exemptions 5, 6 and 7 of FOIA. Defs.' Mot. at 29. Plaintiff filed a cross-motion for summary judgment, arguing that "the Agency released to the Plaintiff ... the Inspector General's *final report* of the investigation, thereby *waiving* any right it might have had to withhold" portions of the "Memorandum for Record, SUBJECT: Alleged Forgery Inquiry." ("Memorandum"). Pl.'s Mot. at 43–44.[24] Plaintiff also claims

that the FOIA exemptions invoked by Defendants are inapplicable to the redacted memorandum sections at issue, and also seeks attorneys' fees and costs. *Id.* at 45–46.

The Freedom of Information Act was enacted "[t]o establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *EPA v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832–833, 35 L.Ed.2d 119 (1973), *quoting* S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). Under the FOIA, almost every document generated by an agency is available to the public unless it falls within one of the Act's nine exemptions. *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975). District courts have jurisdiction to hear challenges to FOIA denials pursuant to 5 U.S.C. § 552(a)(4)(B).

#### 1. *Exemption 5.*

 Exemption 5 allows an agency to withhold from the public "inter-agency or intra-agency memorandums [sic.] or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *Wolfe v. Department of Health and Human Serv.,* 839 F.2d 768, 773 (D.C.Cir.1988). The Supreme Court has stated the purpose of the privilege is to protect the communications process and encourage frank and open discussion among agency employees before a final decision is made. *See NLRB,* 421 U.S. at 150–51, 95 S.Ct. at 1516–17.

 Plaintiff initially claims that when Defendants released Patrick's final report regarding the forgery, they waived any right to withhold the Memorandum sections at issue because the report references the Memorandum and is now part of the public record. *See* Pl.'s Supp.Mem. at 5.[25] Defendants ar-

---

**24.** Plaintiff's initial FOIA claim was for "[a]ll documents and transcripts contained within the I.G.'s investigation of the 1984 falsification of Plaintiff's military records." Pl.'s Mem.Br.Opp. Defs.' Mot. at 43. However, discovery responses by Defendants revealed that the only information being withheld is contained within the redacted portions of the "Memorandum for Record, SUBJECT: Alleged Forgery Inquiry," and Plaintiff has limited his FOIA arguments to the blacked-

out sections of this document or any missing pages. *See* Pl.'s Supp.Br. at 2. The "final report" plaintiff refers to is Defendant Army Inspector General John Patrick's report to Hawaii Governor John Waihee, dated March 6, 1990. DX1 at 138–40.

**25.** Plaintiff additionally asserts that "[i]n producing the document, [Memorandum] federal Defen-

gue they have not waived anything because the report released to the Plaintiff had the exempted portions redacted. Defs.' Reply at 6.

■ Deliberative materials may be withheld from disclosure under Exemption 5 of the FOIA. *See* 5 U.S.C. § 552(b)(5). However, if an agency chooses to adopt or incorporate *expressly* by reference an intra-agency memorandum previously covered by Exemption 5 in what amounts to a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5. *Sears,* 421 U.S. at 161, 95 S.Ct. at 1521.

Defendant Inspector General John Patrick submitted his final report to Hawaii Governor John Waihee on March 6, 1990. Defs.' Ex. DX1 at 138. Patrick wrote that he "[a]lso noted that, except for verification that the unit administrator did sign Sergeant Burkins' name to a request for transfer to the ING, *my findings are the same as those provided by the HI IG directly to Mr. Burkins.*" Defs.' Ex. DX1 at 140 (emphasis added).

*Swisher v. Department of Air Force,* 660 F.2d 369, 371 (8th Cir.1981) discusses the situations in which a document can be expressly adopted or incorporated into a final report. The court in *Swisher* ruled that there had been no *express* adoption or incorporation of a report into a final opinion letter because:

> The letter does not refer in any manner to the rationale or conclusions of the report, but relies on the factual data of the report to ensure that no new issues had been raised in addition to those already considered by the Air Force. This factual portion of the Morris report has been released to Swisher. In addition, there are no references in the letter that the "conclusions and recommendations" are being made available to explain the letter. [citing *Sears* ]. Nor does the letter invite an ex-

amination of the "conclusions and recommendations" in order to discover its reasoning. *Niemeier v. Watergate Special Prosecution Force,* 565 F.2d 967, 972–73 (7th Cir.1977).

*Swisher,* 660 F.2d at 371.

Patrick is obviously referring to *a* report by the Hawaii I.G., the findings of which he believed had already been released to Plaintiff. However, Plaintiff did not actually see a redacted copy of the "Memorandum for Record: Alleged Forgery Inquiry" until July 7, 1992. *See* Pl.'s Supp.Mem. at 2. Although it is not a certainty that Patrick is referring to this document, it is highly likely considering that the Memorandum appears to be a final summary for the record of the I.G.'s investigation.

Patrick's statement that his findings are the "same" as those made by the Hawaii I.G. therefore constitutes an express adoption, which waives protection for the Memorandum under Exemption 5. *See Afshar v. Department of State,* 702 F.2d 1125, 1140 (D.C.Cir.1983) (explicit adoption of withheld memorandum making reference to "[t]he reasons set forth ..." therein.); *accord Niemeier,* 565 F.2d at 973 (intra-agency memorandum quoted in final report which stated that the memorandum is on "file in this office."). I therefore do not reach the merits of Defendants' Exemption 5 assertion.

### 2. *Sections 552(b)(6) & (7)(C).*

■ Section 552(b)(6) of FOIA exempts from disclosure "[p]ersonnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Department of Air Force v. Rose,* 425 U.S. 352, 373, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). Similarly, § 552(b)(7)(C) exempts investigatory records compiled for law enforcement purposes "[t]o the extent that the production of such law

dants waived any right they might have had to assert FOIA Exemption 5 with respect to the document when they produced the redacted copy to the Plaintiff." Pl.'s Supp.Mem. at 3. Such an argument, if upheld, would eviscerate Exemption 5. Agencies are charged with disclosing all information that is not within the scope of Exemp-

tion 5 unless it is "intertwined" with the policymaking or decisionmaking process. *See EPA v. Mink,* 410 U.S. 73, 92, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973). Defendants did not waive this protection by supplying Plaintiff with portions of the Memorandum that are not deliberative and redacting those that are.

enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As with Exemption 5, the burden is on the agency to prove that the document is within the protection of the exemptions. *See Campbell v. United States Civil Serv. Comm'n*, 539 F.2d 58, 61 (10th Cir.1976).

 Both Exemptions 6 and 7(C) require a balancing of the public's interest in obtaining the information against any possible invasions of privacy which would result from disclosure.[26] In considering the public benefit side of the balance, the focus is on the *general public's* need for the information, not the needs of the individual requestor. *Fine v. United States Dep't of Energy*, 823 F.Supp. 888, 895 (D.N.M.1993); *see also Cerveny v. Central Intelligence Agency*, 445 F.Supp. 772, 776 (D.Colo.1978).

 As with the claimed Exemption 5 defense, Defendants offer no explanation as to how disclosure of the redacted portions of the Memorandum would constitute an unwarranted invasion of privacy under Exemptions 6 or 7.[27] The only conceivable source for embarrassment would be if the withheld sections speculate on the identity of the forger of Plaintiff's records. While the mere fact that a person is being contacted in connection with an investigation into criminal acts may be damaging to his or her reputation, the names of all the personnel contacted during the inquiry are listed in the unredacted section at the beginning of the Memorandum. *See* Pl.'s Ex. PXB at 1.

Defendants have revealed that no members of the HARNG were subject to charges or disciplinary action as a result of the investigation. Pl.'s Supp.Mem. at 2. However, amid Plaintiff's allegations of wrongdoing by HARNG personnel and investigatory errors by the I.G., the public interest in the inquiry is great. The Supreme Court has recently made it clear that in Exemption 6 and 7(C) cases "[t]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.*'" *Federal Labor Relations Authority*, —— U.S. at ——, 114 S.Ct. at 1012, (quoting *Department of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989)).

The Tenth Circuit has hinted this level of evidence may be an insufficient basis on which a district court can apply Exemption 6. In *Weahkee v. Norton*, the court reviewed a district court's denial of plaintiff's FOIA request, and indicated procedures it would normally expect a lower court to follow in Exemption 6 cases:

> In the instant case, the court did not inspect the files to determine whether they were subject to an exemption; it did not receive affidavits or testimony from the agency on which it might base a decision to deny disclosure; and the court stated no basis for its denial of plaintiff's motion. *Because the court could not have performed its balancing function without reviewing the documents sought or at least requiring evidence in the form of affidavits,* we conclude the court did not base the denial on exemption six.

621 F.2d 1080, 1082 (10th Cir.1980) (emphasis added). Without supporting affidavits from Defendants or an *in camera* examination of the document, I cannot balance the interests involved. Accordingly, I deny Defendants' motion and Plaintiff's cross motion for summary judgment with respect to the third claim.

---

**26.** However, Exemption 7(C) is more protective of privacy than Exemption 6. *United States Dept. of Defense v. Federal Labor Relations Authority*, —— U.S. ——, —— n. 6, 114 S.Ct. 1006, 1013 n. 6, 127 L.Ed.2d 325 (1994).

**27.** Exhibit 3, attached to the Memorandum of Points and Authorities in Support of Defendants'

Motion to Dismiss or in the Alternative for Summary Judgment is a letter opinion to Plaintiff from the Department of the Army upholding the partial denial of his FOIA request. It is also uninformative as to the specific reasons why Exemptions 5, 6 and 7 apply to the redacted portions of the inquiry Memorandum. Mem. Supp.Defs.' Mot., DX3.

### C. *Fourth Claim for Relief under the Privacy Act.*

Defendants argue the Privacy Act does not allow actual damages in "access to records" cases filed under 5 U.S.C. § 552a(g)(1)(B). Defendants mischaracterize Plaintiff's Privacy Act claim as an action *solely* for access to records under § 552a(d)(1). Section 552a(d)(1) allows individuals to request their record or information pertaining to them held by an agency (with exceptions).[28] Section 552a(g)(1) provides the district courts with jurisdiction over civil actions by plaintiffs enforcing the requirements of the Act. However, in suits to compel compliance with § 552a(d)(1), actual damages cannot be recovered—the court can only order an agency to produce the records. *See* 5 U.S.C. § 552a(g)(4); *see Thurston v. United States*, 810 F.2d 438, 447 (4th Cir.1987); *Quinn v. Department of Health and Human Serv.*, 838 F.Supp. 70, 71 (W.D.N.Y.1993).

Although Plaintiff asserts Defendants failed to comply with § 552a(d)(1), he also claims an error was made in maintaining his records and he was wronged by such error. Pl.'s Mem. at 37. Plaintiff's allegations therefore appear to fall within the ambit of § 552a(g)(1)(C) of the Act, which states that an individual has a cause of action if an agency

> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual ...

28 U.S.C. § 552a(g)(1)(C). The Privacy Act allows actions for damages based on alleged violations of § 552a(g)(1)(C) or (D). 28 U.S.C. § 552a(g)(4). Plaintiff asserted his right to bring suit under § 552a(g)(1), and did not specify which of the four subsections ((A)–(D)) are directly applicable to his suit. However, Defendants' attempt to characterize it as an action solely for access under § 552a(d)(1) is erroneous in light of Plaintiff's assertions that he was also harmed by *mistakes* in his records. *See* Pl.'s Resp. at 37–38. I therefore deny Defendants' motion for summary judgment with respect to Plaintiff's fourth claim.

Whether Defendants' refusal to release records containing information about the alleged falsification of Plaintiff's military records constitutes a violation of the federal Privacy Act raises questions of fact not disposed of by the record. I therefore deny Plaintiffs' cross-motion for summary judgment on the fourth claim.

### V. *Conclusion.*

IT IS ORDERED THAT Defendants' Motion to Dismiss or in the alternative for Summary Judgment on Plaintiff's first, third and fourth causes of action is DENIED;

IT IS FURTHER ORDERED THAT Defendants' Motion to Dismiss or in the alternative for Summary Judgment on Plaintiff's second and fifth causes of action is GRANTED;

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Summary Judgment is DENIED.

---

**28.** The provision states:

> (d) Access to records—Each agency that maintains a system of records shall—
>
> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;

5 U.S.C. § 552a(d)(1).